IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SCOTT JENKINS and )
JENKINS DISPLAYS CO., )
 )
              Plaintiffs, )
 )
vs. )
 )
 ) Case No. 14–cv–0004–MJR–DGW
FIRST VANDALIA CORP., d/b/a First )
Nat'l Bank of Vandalia, )
WILLIAM ERNEST CHAPPEL, )
CITY OF VANDALIA, IL., and )
JACK JOHNSTON, )
 )
              Defendant. )

## MEMORANDUM & ORDER

**REAGAN, Chief Judge**:

Labelling a controversy a federal lawsuit does not make it so. For the reasons articulated below, the undersigned **REMANDS** this case to the Circuit Court of the Fourth Judicial Circuit, Fayette County, Illinois.

### BACKGROUND

This lawsuit stems from allegations that Plaintiff Scott Jenkins,[1] relying on a fraudulent letter indicating the mayor of Vandalia, Illinois ("the City") had ordered Jenkins' multi-million dollar entertainment facility closed, deeded that facility to the First Vandalia Corporation ("the Bank"). The thirty-count Second Amended Complaint comprises twenty-seven state law claims and three (purported) federal constitutional claims. Those claims—undisputedly the only font of potential subject

---

[1] Scott Jenkins is president of co-Plaintiff Jenkins Displays Co. For simplicity's sake, the Court will refer to both Plaintiffs, collectively, as "Jenkins."

matter jurisdiction in this Court—are § 1983 due process claims against the City (Count XVIII), the Bank (Count XXIX), and Bank President William Ernest Chappel (Count XXX).

Common to all theories of relief is that the Bank President delivered a "Closure Letter" that caused Jenkins to sign over the facility. The Closure Letter, allegedly drafted by the City Mayor and/or a city attorney,[2] "purported to cloak the [City] with statutory right to close" Jenkins' facility because it contained the Mayor's typewritten name (but no signature). Rather than go through foreclosure, Jenkins deeded the facility back to the Bank.

Pursuant to its duty to police subject matter jurisdiction *sua sponte*, *Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005), and Judge Easterbrook's maxim that "some theories are such piffle that they fail even to make out claims arising under federal law, and [therefore] must be dismissed for want of jurisdiction," *Goros v. Cnty. of Cook*, 489 F.3d 857, 860 (7th Cir. 2007), the Court ordered briefing on the viability of Counts XVIII, XXIX, and XXX. The parties complied with the briefing schedule, and the matter is ripe for ruling.

As a threshold matter, Jenkins' argument that Defendants' removal of this action somehow precludes remand is a non-starter. Limits on subject-matter jurisdiction (as opposed to other case-processing rules) must be enforced "no matter what the litigants do." *Myrick v. WellPoint*, 764 F.3d 662, 665 (7th Cir. 2014). Jenkins' best effort is a straw-grasping assertion that Defendants should be

---

[2] The city attorney, Jack Johnston, also served on the Bank's Board of Directors and acted as the Bank's attorney.

2

judicially estopped from arguing for remand, but judicial estoppel cannot give a district court jurisdiction it does not otherwise have. *U.S. v. Maranda*, 761 F.3d 689, 694 (7th Cir. 2014) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court," so "principles of estoppel do not apply"); and *Erie Ins. Exch. V. Erie Indem. Co.*, 722 F.3d 154, 162–63 (3d Cir. 2013) (federal courts cannot apply judicial estoppel "in a way that would impermissibly expand federal judicial power in violation of Article III")).

Plaintiffs' three ostensibly federal claims are clearly foreclosed by well-established caselaw. The claims therefore fail to invoke this Court's limited jurisdiction: if "prior decisions inescapably render the claims frivolous," federal courts are without power to pass judgment on the issues. *Hagans v. Lavine*, 415 U.S. 528, 538 (1974); *Goros*, 489 F.3d at 860. *See also Northeastern Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013).

## ANALYSIS

Congress did not intend § 1983 to federalize state tort law. *Briscoe v. LaHue*, 460 U.S. 325, 349 (1983). The statute only permits an individual to sue a "person" who deprives that individual of his or her federally-guaranteed rights "under color of state law." *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014). Here, Plaintiffs have sued a municipality and a private corporation (either of which can only be liable under § 1983 in limited circumstances), and a private corporation's officer

(who, as a private citizen, is generally not an actor "under color of state law"). The Court will address those Defendants in turn.

### 1. *Count XXVIII—Frivolity of § 1983 Claim against the City*

A municipality is subject to § 1983 damages only if the purportedly unconstitutional act is caused by (1) an official policy, (2) a widespread / well-settled governmental practice or custom, or (3) by an official with final policy-making authority. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiff Jenkins does not allege the City had an official policy driving the takeover of the Jenkins facility. Nor does the Second Amended Complaint plausibly describe a widespread or well-settled practice. The lawsuit describes a one-off event, and *Monell* liability based on a practice or custom requires "more than one instance" of conduct. *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988). So any theory of relief against the City must derive from the Mayor's actions—presuming he had final policy-making authority.

And on that issue, Plaintiffs plead themselves out of court. The Second Amended Complaint gives two clues as to the Mayor's lack policy-making authority here. Plaintiffs allege that the City, "by and through its agents, Mayor Gottman and [the City Attorney], worked in collusion and schemed with [the Bank and the Bank President] … for the purpose of inducing [Plaintiff] to sign a deed in lieu of foreclosure for the benefit of [the Bank]." (Doc. 41 ¶ 248). Of course, the mere existence of an agency relationship cannot establish § 1983 liability for the City.

*Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 791 (7th Cir. 2014). Further, the pleadings make no reference to what *policy* those agents were carrying out, leaving the Court (and Defendants) with mere speculation to link the Mayor and City Attorney to City policymakers. *See Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) (in ruling an executive was not a *Monell* policymaker: "…we could spin out endless hypothetical policies. This only suggests that [the plaintiff] has not stated a claim from which we could conclude that the alleged custom or policy exists.").

More damningly, Jenkins alleges that, "[u]pon information and belief, [the] Closure Letter was authored by [the City Attorney] on behalf of [the Bank] or, [alter]natively, was otherwise authorized by [the Mayor] *in violation of the authority of Mayor of Vandalia pursuant to Illinois law*." (Doc. 41 ¶ 40). Precedent is clear on the point. In *Auriemma v. Rice*, the Court of Appeals held there was no municipal liability where the Chicago police superintendent unequivocally acted against municipal code. *Auriemma*, 957 F.2d 397, 399 (7th Cir. 1992). Here, similarly, the fact that the Mayor acted unequivocally outside the bounds of his authority eviscerates any § 1983 liability. *See Auriemma*, 957 F.2d at 400 ("[T]he agent's action must implement rather than frustrate the government's policy."); *Cornfield*, 991 F.2d at 1325 ("Certainly someone with executive authority whose actions fly in the face of state or local law is not a policymaker under *Monell* and its progeny.").

The § 1983 claim against the City is not "serious" enough to warrant consideration in this Court. See *Goros*, 489 F.3d at 860. Count XVIII is dismissed for want of subject matter jurisdiction.

2. *Counts XXIX & XXX—Frivolity of § 1983 Claims against Bank & President*

*Monell*'s restrictions on § 1983 liability typically surface in the context of municipal corporations, but its principles extend to private corporations too. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 692). Like a municipality, a private corporation can be liable "if the injury alleged is the result of a policy or practice, or liability can be demonstrated indirectly by showing a series of bad acts and inviting the court to infer from them that the policy-making level … was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned" the misconduct. *Id.* (quoting *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (quoting, in turn, *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir. 2004)). A private corporation cannot be vicariously liable for its employees' deprivations of others' civil rights. *Rodriguez*, 577 F.3d at 822.

A defendant must also fit into the category of persons to which § 1983 applies. When a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show the private entity acted "under the color of state law." *Rodriguez*, 577 F.3d at 822. The requirement "is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those that must be left to the remedies of

state tort law." *Id.* at 822–23. Courts have articulated various approaches to the test, *see id.* at 823–24, but the ultimate issue in determining whether a person is subject to § 1983 liability is whether the alleged infringement of federal rights is "fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoted in *Rodriguez*, 577 F.3d at 823).

Here, the Bank's actions cannot possibly be attributable to the State. The allegation underlying all the claims in the case—that the Closure letter delivered by bank employees "purported to cloak the City … with statutory right to close [Plaintiffs' facility] despite the fact that such an action was not warranted under existing law"—is literally a statement that the Bank perpetrated a fraud to camouflage itself as a state authority, not that it *was* a state actor. Similar to the claims against the City, what has been alleged is a single isolated event, not an official policy, widespread custom, or series of bad acts needed to attach *Monell* liability to the Bank.

Nor do the allegations against the Bank President implicate § 1983. The purpose behind the statute's "state actor" requirement is to demarcate federal matters from those that must be left to the remedies of state tort law. *Rodriguez*, 577 F.3d at 822–23. And here, Plaintiff's theory against the Bank President tracks the theory against the Bank: the President "presented the Closure Letter for the purpose of inducing [Plaintiff] to sign a deed in lieu of foreclosure," and "used the cloak of authority of the Closure letter to force [Plaintiff] to sign the deed in lieu of foreclosure and thus deprive [Plaintiff] of the ability to challenge any foreclosure

7

action." (Doc. 41, 52). In other words, the President pretended to have the authority of the City behind him, but did not. It would be counterintuitive at best to attach § 1983 "under color of state law" status on a defendant simply because he pretends to be a state (or City) actor. Plaintiff's interest in his facility is protected by state tort law against the Bank President's allegedly fraudulent behavior,[3] but the U.S. Constitution is not implicated. *See Zemke v. City of Chi.*, 100 F.3d 511, 513 (7th Cir. 1996) (informal assurance by someone not authorized to make it cannot establish a constitutional violation); *London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010) ("Misuse of a state law by a private party" does not satisfy the "under color of state law" requirement); *Greco v. Guss*, 775 F.2d 161, 166 (7th Cir. 1985) ("When a private party, in violation of a state statute, deprives another party of property, that deprivation obviously cannot constitute conduct fairly attributable to a state rule or decision.").

## CONCLUSION

Plaintiff's motivations for desiring to proceed in this forum are unclear, but the outcome of their foray into federal court is not. Where a cause of action is "patently without merit," *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S 59, 70 (1978), or where it is immaterial and asserted solely for the purpose of obtaining jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998), federal courts lack jurisdiction over that cause of action. As discussed above, Counts XXVIII, XXIX, and XXX are dismissed for failing to meet that low bar.

---

[3] While not dispositive, it is worth noting that the vast majority of claims asserted here are state tort claims—a fact which bolsters the conclusion that the interests at stake are "properly left to the remedies of state tort law." *See Rodriguez*, 577 F.3d at 822–23.

Because no federal claims remain in the case, the Court has broad discretion to relinquish supplemental jurisdiction over any state-law claims.[4] *RWJ Mgmt. Co., Inc. v. BP Prods. North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012); 28 U.S.C. § 1367(c)(3). The presumption in favor of relinquishment may be overcome if the federal court has invested substantial time in the case, but that "limited circumstance" is not present here. *See RWJ Mgmt.*, 672 F.3d at 478.

It is accordingly **ORDERED** that this action is **REMANDED** to the Circuit Court of the Fourth Judicial Circuit, Fayette County, Illinois. The Clerk of the Court is **DIRECTED** to transmit a certified copy of this Memorandum & Order to the clerk of the state court, and to **CLOSE** this case.

IT IS SO ORDERED.  
DATE: March 5, 2015

s/ *Michael J. Reagan*  
MICHAEL J. REAGAN  
Chief Judge  
UNITED STATES DISTRICT COURT

---

[4] It is perhaps more accurate to say that this Court never had jurisdiction over the case at all, since supplemental jurisdiction is entirely dependent on original jurisdiction. *See* 28 U.S.C. § 1367(a). *Accord* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").